UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

HELEN CARRIE PROFFER,   Case No. 07-30881-dof
                        Chapter 7 Proceeding
    Debtor.              Hon. Daniel S. Opperman
_____/
HELEN CARRIE PROFFER,

    Plaintiff,

v.                       Adv. Pro. Case No. 07-3063-dof

NELNET, INC. (MICHIGAN GUARANTY AGENCY),
SALLIE MAE (MICHIGAN GUARANTY AGENCY),
& DIRECT LOANS,

    Defendants.
_____/

## OPINION

Plaintiff, Helen Proffer, filed the Complaint in this action seeking a determination that numerous student loans owed by her are discharged under 11 U.S.C. § 523(a)(8). Trial in this matter was held on March 4, 2008. At the conclusion of the proofs and arguments, this Court took this matter under advisement.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## FINDINGS OF FACT

Plaintiff, Helen Proffer, is 54 years old and has one dependent, a 17 year old daughter who is a junior in high school in the Flint area. Ms. Proffer currently lives with a friend at 5063 Atherton Road, Burton, Michigan, after losing her house through foreclosure. When she is able, Ms. Proffer

1

pays rent and utilities from her income. Currently, Ms. Proffer is unemployed. Ms. Proffer is divorced and does not expect to receive any income from her ex-husband, who is disabled.

Ms. Proffer started taking classes at Baker College and obtained an undergraduate degree in 2002. Ms. Proffer's Bachelor's Degree from Baker College was in Business Administration, and she soon obtained a job with Mehra Tube. During her employment at Mehra Tube, which supplied products to the automobile industry, Ms. Proffer earned approximately $20,000 annually. Her Statement of Financial Affairs indicated she earned $22,670 in 2004. The education that she received at Baker College, while useful at Mehra Tube, was not directly related to her employment.

After obtaining her undergraduate degree, Ms. Proffer submitted a number of job applications which did not result in a job in her field. She then decided to obtain a Master's Degree in Business Administration and attended classes at Baker College. During this time, Ms. Proffer incurred the student loans in issue in this case. Ms. Proffer obtained her Master's Degree in Business Administration in 2004, but was unable to obtain new or better employment as a result of that degree. After losing her job at Mehra Tube, Ms. Proffer did become employed as an office manager for D.M. Burr, which supplies janitorial services to local businesses. Since 2004, Ms. Proffer has submitted numerous job applications for any job ranging from hamburger cook to positions related to her expertise in the human resource area. These job applications have targeted the Flint, Saginaw, and the northern Detroit area, but again, none have resulted in a better job for Ms. Proffer.

In September of 2006, Ms. Proffer received a statement from one student loan servicer indicating that payment needed to start. At the time, Ms. Proffer was attempting to save her house and was collecting money to try to either avoid foreclosure or redeem her house. These efforts failed. In March of 2007, Ms. Proffer filed a Petition seeking relief under Chapter 7 of the United States Bankruptcy Code with this Court. On May 1, 2007, Ms. Proffer, through her counsel, filed the Complaint in this action which was duly answered by the various Defendants. [1]

Ms. Proffer testified on her behalf at the March 4, 2008, trial. The Court finds that Ms. Proffer is credible and testified truthfully. Ms. Proffer has attempted to find employment in Flint, Saginaw, and northern Detroit for some time, but her efforts have not succeeded. Most recently,

---

[1] Defendant, Direct Loans Servicing Center, consented to the entry of the order determining that the debt owed by the Debtor to it was discharged.

Ms. Proffer has limited her search because she is concerned that her one remaining major asset, a 1994 Dodge Caravan which has over 200,000 miles on it, may not withstand the travel to a job outside the general Flint area.

At trial, Plaintiff requested this Court take judicial notice that the general economic condition of Flint, Saginaw and Detroit is not good, and that the unemployment rate for these areas is higher than the national average. After some discussion on the record, the parties agreed that the Court could take judicial notice that the general economic condition in these three cities is not good, and that the unemployment rate in each city is higher than the national average.

## APPLICABLE STATUTE

Section 523(a)(8) of the Bankruptcy Code provides:

(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
    (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants.

## DISCUSSION

The parties agree that the appropriate standard to analyze 11 U.S.C. § 523(a)(8) is stated by the Sixth Circuit in the case of *Cheesman v. Tennessee Student Assistance Corp.* (*In re Cheesman*), 25 F.3d 356 (6th Cir. 1994). In particular, the *Cheesman* Court requires a debtor to demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependants if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) that the debtor has made good faith efforts to repay the loans. *Id*. at 359.

The *Cheesman* Court adopted the rationale of the Second Circuit as stated in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). More recently, the Sixth Circuit has adopted the *Brunner* rationale in *Oyler v. Educational Credit Mgmt. Corp.* (*In re Oyler*), 397 F.3d 382 (6th Cir. 2005).

3

Defendants do not dispute that Plaintiff has satisfied the first requirement of *Cheesman*. Defendants do dispute, however, whether Plaintiff has shown sufficient facts to meet the second and third requirements of *Cheesman*.

Most notably, Defendants argue that the second requirement is not satisfied in that the additional circumstances experienced by Plaintiff are not likely to persist for a significant portion of the repayment period. In particular, Defendants concede that while the current economic condition in Michigan is not good, nothing prohibits the Plaintiff from moving to another place which enjoys a better economic climate. In response, Plaintiff points out that she is 54 years old, has a 17 year old daughter who is currently attending high school, and has historic and familial ties to the Flint, Michigan area. Moreover, Plaintiff argues that she suffers from arthritis and bursitis and that these conditions somewhat adversely affect her ability to obtain employment.

In analyzing this element, the Court notes that the Plaintiff in the instant case does not suffer the debilitating conditions found in other cases where a discharge is granted. Most notably, the Plaintiff in this case is not physically disabled and appeared to this Court to be an intelligent and articulate woman capable of obtaining employment somewhere. What is clear to this Court, however, is that the Plaintiff could not obtain employment in Flint, Michigan for the foreseeable future in these circumstances.

Plaintiff's condition, however, is not so permanent as to meet the second element of *Cheesman*. In particular, the record is completely devoid of any reason why the Plaintiff could not move to another area, especially after her teenage daughter graduates from high school. While the Court notes that the Plaintiff does not enjoy the status of union membership which would allow her to perhaps obtain employment in another state, the Court does believe that Plaintiff is resourceful enough to obtain sufficient monies to go to a job elsewhere if one was available by way of the internet, mail, or other methods. Thus, the Court concludes that Plaintiff has not met the second requirement of *Cheesman*.

Turning to the third *Cheesman* element, Defendants argue that the Plaintiff did not take the necessary good faith efforts to repay the student loans. In response, Plaintiff points to her efforts to try to save her house and also to her very tight budget, which does not allow for any repayment on her student loans. In this regard, the Court notes that the case law does support Defendants'

4

argument, but the facts are such that Plaintiff simply does not have sufficient monies to offer any to repay the student loans, the first becoming due in September of 2006. Moreover, Plaintiff did state at the trial in this case that if she had a job that earned sufficient income, she would have made a good faith effort to pay some of the student loans. Accordingly, the Court finds that the Plaintiff has met the third element of *Cheesman*.

The Sixth Circuit Court of Appeals has held that Bankruptcy Courts may exercise equitable powers provided by 11 U.S.C. § 105(a) to create remedies for debtors who are not entitled to an undue hardship discharge of their student loans. *In re Hornsby v. Tennessee Student Assistance Corp.*, (*In re Hornsby*) 144 F.3d 433 (6th Cir. 1998). In particular, the *Hornsby* Court concluded: "a bankruptcy court . . . may fashion a remedy allowing [debtors] ultimately to satisfy their obligations to [the lender] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances." *Id*. at 440.

In the instant case, it is clear to the Court that the Plaintiff, a 54 year old woman, simply cannot currently service the interest, much less a principal reduction, of student loans that total $89,213 as of November, 2007. As seen from the Statement of Financial Affairs of the Debtor, her income from 2004 through 2006 ranges from $22,670 to $12,526 in 2006. The Court notes that the Department of Health and Human Services Poverty Guidelines for 2008 place this Debtor, along with her 17 year old daughter, within the poverty levels as defined by that department.

The Bankruptcy Code offers a fresh start to every debtor who fulfills their obligations to the Court. In this case, the Court believes that Ms. Proffer has done exactly that. On the other hand, 11 U.S.C. § 523(a)(8) prohibits the discharge of her student loan obligations. To balance these two conflicting positions, the Court fashions the following resolution.

First, the Court acknowledges and respects Ms. Proffer's desire to stay in Flint, Michigan until her daughter graduates from high school. After that date, however, the Court believes that Ms. Proffer needs to either obtain employment in Flint, Michigan or look elsewhere to maximize her substantial investment in education. To give Plaintiff an incentive to do so, the Court will not require Ms. Proffer to pay any money to Defendants until June of 2009. The Court will, however, require Ms. Proffer to submit a copy of her tax return to counsel for Defendants starting for the 2008 calendar year and that her 2008 tax return be supplied to Defendants' counsel within 30 days of the

5

filing with the Internal Revenue Service. If Plaintiff does not earn sufficient income to submit a tax return, she shall certify that fact to Defendants' counsel.

Commencing in June of 2009, the Court expects Ms. Proffer to expand her search for employment, which hopefully will allow her to get employment more suited to her educational background. Plaintiff shall continue to submit her tax returns to Defendants' counsel and, starting in June of 2010, shall work out a schedule of periodic payments on these obligations that is equal to 10% of her gross income which is in excess of 150% of the poverty levels as established by the Department of Health and Human Services. In the event Plaintiff should lose employment during this time, she shall immediately notify Defendants' counsel of that event and the payments on this obligation shall be stayed until Plaintiff obtains new employment. In the event Plaintiff receives unexpected income, she shall immediately notify Defendants' counsel to arrange for payment of a suitable percentage of that income. If Plaintiff and Defendants are unable to agree, they may petition this Court for appropriate relief.

Plaintiff's obligations pursuant to this Opinion shall continue until June of 2019.

The goal of the Court's ruling is to allow the Plaintiff an opportunity to obtain employment and repay a portion of her student loans. In doing so, however, the Court does not want to unduly burden the Plaintiff when it appears to this Court that the Plaintiff has done all that she can do seek employment in this area. That being said, Plaintiff will soon be able to be more flexible in her employment options and should, for her benefit, as well as the benefit of her family and society, take advantage of these possibilities. In doing so, the Court fashions a remedy that will give Plaintiff an incentive to seek employment, but yet the hope that she will not be sentenced to a financial burden for which she has no hope of repaying in her natural lifetime. To the extent that Defendants, through the substantial resources of the State of Michigan, can assist Plaintiff in obtaining that employment, the Court encourages Defendants to do so.

Defendant's counsel will enter an Order consistent with this Opinion.

**Signed on March 28, 2008**

                                        **/s/ Daniel S. Opperman**
                                          **Daniel S. Opperman**
                                          **United States Bankruptcy Judge**